# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-701V

```
* * * * * * * * * * * * * * * * * * * * * * * *   *
                                                  *
                                                  *
LISA ANTALOSKY,                                   *
                                                  *
                    Petitioner,                   *
                                                  *   Special Master Katherine E. Oler
                                                  *
v.                                                *
                                                  *
                                                  *
SECRETARY OF HEALTH AND                           *
HUMAN SERVICES,                                   *   Filed: July 18, 2024
                                                  *
                                                  *
                    Respondent.                   *
                                                  *
* * * * * * * * * * * * * * * * * * * * * * * *   *
```

*Edward Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner
*Traci Patton*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

**Oler**, Special Master:

On June 16, 2016, Lisa Antalosky ("Ms. Antalosky" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") alleging Ms. Antalosky suffered from advanced obstructive lung disease secondary to constrictive bronchiolitis which was caused-in-fact by the influenza ("flu") vaccination she received on October 15, 2014. Pet. at 1, ECF No. 1. On September 29, 2023, Petitioner was awarded 1) a lump sum payment of $1,078,449.55, which amount

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

represents life care expenses expected to be incurred during the first year after judgment ($20,242.42), lost earnings ($798,691.91), pain and suffering ($250,000.00), and past un-reimbursable expenses ($9,515.22) in the form of a check payable to petitioner; and 2) an annuity as described in the Decision Awarding Damages pursuant to a proffer. ECF No. 105.

Petitioner filed a motion for final attorneys' fees and costs on January 30, 2024, requesting a total of $89,923.67. ECF No. 110 (hereinafter "Fees Application"). Respondent responded to the motion on February 9, 2024, stating that "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and requesting that the Court "exercise its discretion and determine a reasonable award for attorneys' fees and costs." ECF No. 111 (hereinafter "Fees Response") at 2, 3.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$89,212.64** in attorneys' fees and costs.

## I.    Legal Standard

Section 15(e) (1) of the Vaccine Act allows for the Special Master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, they are eligible so long as the Special Master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. The petitioner bears the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A.   Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum.*

*Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *6-7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Instead, the claim must be supported by objective evidence. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius*, 984 F.3d at 1380 (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of*

*Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.  Good Faith and Reasonable Basis

Petitioner received an award of over $1,000,000. Because Petitioner was awarded compensation pursuant to a proffer, she is entitled to an award of reasonable attorneys' fees and costs.

### B.  Attorneys' Fees

Petitioner retained Mr. Edward Kraus to represent her in this matter. *See* Fees App. Petitioner requests a total of $34,399.30 in attorneys' fees. *Id.* at 1.

#### 1.  Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf

The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf

The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.

The 2023 Fee Schedule can be accessed at: https://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2023.pdf

The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

Petitioner requests compensation for her attorney, Mr. Kraus at the following hourly rates: $458.00 per hour for work performed in 2021; $472.00 per hour for work performed in 2022; $497.00 per hour for work performed in 2023; and $525.00 per hour for work performed in 2024. Fees App., Tab A.

Petitioner also requests compensation for attorney Amy Kraus at the following hourly rates: $414.00 per hour for work performed in 2022, and $460.00 per hour for work performed in 2024; and paralegal rates ranging from $160.00 to $177.00. Fees App., Tab A. The Kraus Law Group have been previously awarded their 2021-2024 rates by other Special Masters. *See, e.g.*, *Egan v. Sec'y of Health & Hum. Servs.*, No. 21-1928V, 2024 WL 2130749 (Fed. Cl. Spec. Mstr. Apr. 10, 2024); *Elenteny v. Sec'y of Health & Hum. Servs.*, No. 19-1972V, 2023 WL 4399710 (Fed. Cl. Spec. Mstr. May 31, 2023); *Weaver v. Sec'y of Health & Hum. Servs.*, No. 16-1494V, 2022 WL 4351738 (Fed. Cl. Spec. Mstr. Aug. 25, 2022). I see no reason to disturb these rates.

## 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs*., 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs*., 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

Petitioner's counsel has provided a breakdown of hours billed. I find the hours to be

largely reasonable but a small reduction is required for administrative tasks, such as "Finalize and electronically submit the Notice of Change of Attorney Contact information to the Court ECF system for filing in this case. Receipt of confirmation of filing same," "Draft Notice of Filing for attorney review and filing with the Court," "Review Public Ruling on Entitlement from the Court and update file accordingly," "Research local copy services and telephone call with several in order to line up a copy service for the production of records; update case notes accordingly," "Draft Notice of Filing exhibits 70-71 and update the Exhibit List for attorney review and filing with the Court," and "Receipt and review of Public Decision from the Court, update file and calendar deadlines accordingly."[4] *See* Fees App., Tab A. Billing for administrative tasks is not permitted in the Vaccine Program. This constitutes 1.4 hours of work performed by paralegals, or a deduction of $254.50.

I award Petitioner a total of **$34,144.80** in attorneys' fees.

### C. Reasonable Costs

Petitioner requests a total of $55,524.37 in attorneys' costs: $122.70 for medical record requests; $102.97 for shipping costs; $250.00 for copying costs; $6,146.50 for legal research and services, and $43,872.50 for Dr. Gershwin's reports, travel to the entitlement hearing and testimony during the entitlement hearing. Mr. Kraus also submitted a separate receipt pertaining to costs incurred while he was employed at the Chicago-Kent College of Law, totaling $5,029.70: $8.80 for shipping costs; $5,000.00 for legal research; and $20.90 for medical records requests. Petitioner provided documentation for the medical record requests, shipping costs, copying costs, and legal research services, and costs incurred while he was employed at the Chicago-Kent College of Law; therefore I grant them in full. *See* Fees App., Tab B.

### 1.   Petitioner's Expert Costs for Dr. M. Eric Gershwin

Petitioner requests $43,872.50 for work performed by Dr. Eric Gershwin. Fees App., Tab B. Petitioner requests Dr. Gershwin be compensated at a rate of $500.00 per hour. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See, e.g., Antalosky v. Sec'y of Health & Hum. Servs.*, No. 16-701V, 2022 WL 363916 (Fed. Cl. Spec. Mstr. Jan. 24, 2022)l; *A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 WL 3969874 (Fed. Cl. Spec. Mstr. Jun. 4, 2020); *Hoskins v. Sec'y of Health & Hum. Servs.*, No. 15-071V, 2017 WL 3379270 (Fed. Cl. Spec. Mstr. Jul. 12, 2017). I had previously deferred compensating Dr. Gershwin in a request for interim fees and costs due to block billing. *See Antalosky* at *6. Updated invoices were submitted documenting 78.55 hours of work performed by Dr. Gershwin in this case, to include 14.05 hours for the entitlement hearing. Dr. Gershwin additionally billed $250/hour for his eight hours of travel to and from the entitlement hearing. I find that these hours are reasonable, therefore I grant them in full.

I next discuss Dr. Gershwin's travel expenses ($2,597.50), which include airfare, hotel, parking, and transportation. These costs are largely reasonable, however I must analyze Dr. Gershwin's first class or business class flights to and from the entitlement hearing. To support

---

[4] *See* entries on 5/4/2022, 6/22/2022, 7/13/2022, 8/11/2022, 8/22/2022, 11/2/2023. Fees App., Tab A.

compensation for his upgraded flights, Dr. Gershwin submitted a "letter of medical necessity" from Dr. Stanley M. Naguwa, a clinical professor at UC Davis. Fees. App., Tab B at 39. The letter states, "I am Dr. Merrill Eric Gershwin's physician under UC Care. Dr. Gershwin suffers from spinal stenosis and on flights of greater than 3 hours duration, must fly business class. I am not permitted under HIPPA (sic) to provide any further details." *Id.* at 44. This letter states that Dr. Gershwin must fly business class on flights that are longer than three hours. Two of Dr. Gershwin's four flights were longer than three hours (the flight from San Francisco to Washington Reagan Airport, and the flight from Chicago to Sacramento), while two were not (flights from Sacramento to San Francisco, and from Washington Reagan Airport to Chicago).

In determining how much to reasonably compensate Petitioner for Dr. Gershwin's travel, I have considered that an economy two-day trip from Sacramento to Washington, DC, of comparable travel times, is currently about $416.00, or approximately ¼ of the costs of Dr. Gershwin's flight ($1,826.10). Mr. Kraus makes the argument that there is no *per se* rule against awarding upgraded travel expenses. Fees. App. at 1-2. I disagree; special masters have consistently reduced any non-economy flights taken by both counsel and experts by 50%. *See, e.g., Davis v. Sec'y of Health & Hum. Servs.*, No. 14-978V, 2022 WL 17819161 (Fed. Cl. Spec. Mstr. Oct. 12, 2022) (where Dr. Steinman voluntarily reduced his business class flight price by 50%); *Roby v. Sec'y of Health & Hum. Servs.*, No. 15-125V, 2021 WL 1546051 (Fed. Cl. Spec. Mstr. Mar. 19, 2021); *A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 WL 3969874 (Fed. Cl. Spec. Mstr. Jun. 4, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 14-952V, 2020 WL 1181739 (Fed. Cl. Spec. Mstr. Jan. 17, 2020); *Forrest v. Sec'y of Health & Hum. Servs.*, No. 14-1046V, 2019 WL 5704792 (Fed. Cl. Spec. Mstr. Oct. 2, 2019) (where Dr. Kinsbourne voluntarily reduced his business class flight price by 50%); *Tetlock v. Sec'y of Health & Human Servs.*, No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017). I accept that a legitimate medical reason can constitute an exception to the general rule that business class travel will not be compensated at the full rate. Here, two of Dr. Gershwin's four flights were longer than three hours, and thus fall within the parameters outlined by his physician. However, two of the flights, based on the plain language of this letter, should have been flown in coach class. Based on the above, I reduce Dr. Gershwin's airfare by 25%, or $456.53.

I award Petitioner a total of **$55,067.84** in attorneys' costs.

### III.   Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

- A lump sum in the amount of **$89,212.64**, representing reimbursement of Petitioner's attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Mr. Edward Kraus.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

**<u>s/ Katherine E. Oler</u>**
Katherine E. Oler
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.